**In re BUSINESS INTELLIGENT SYSTEMS, LLC, Debtor.**

No. 02–36646(1)(7).

United States Bankruptcy Court, W.D. Kentucky.

May 17, 2005.

Dennis D. Murrell, Louisville, KY, Jonathan L. Gay, W. Thomas Bunch, Lexington, KY, for Debtor.

James R. Higgins, Jr., Thomas W. Frentz, Louisville, KY, for trustee.

### *MEMORANDUM–OPINION*

JOAN L. COOPER, Bankruptcy Judge.

This matter comes before the Court on remand from the United States District Court for the Western District of Kentucky with the instruction for further findings of fact regarding claims made by Douglas W. Wise ("Wise") against this bankruptcy estate for debt arising from

loans to Business Intelligent Systems, LLC ("Debtor" or "BIS") during calendar year 2002 and for the determination of the appropriate period of time during which Wise is entitled to claim unpaid salary.

While the facts of the dispute presented to the Court were discussed at some length in this Court's prior decision, a brief recitation for the purposes of this Court's instant findings is provided for clarity.

1. In early 2001, Kenneth Wayne Day ("Day") introduced Steven A. Turner ("Turner") to Wise. Day knew that Turner was looking for an investor to assist him in a venture then known in its infancy as "T.L.C. dba Auto–Vations.com." Day also knew that Wise had a background in the automotive industry and was looking for an investment.

2. Wise and Turner formed BIS and on March 8, 2001, each executed an Operating Agreement as members of BIS. Exhibit A to the Operating Agreement sets forth the initial capital contribution and value of each member and the ownership interest of each. For his $30,000 initial capital contribution, Wise received 50 percent of BIS and for a list of four separate items of software (manuals and other related items), Turner received 50 percent of BIS.

3. Turner testified that BIS was a member managed limited liability company rather than a manager managed company.

4. Turner had projected that BIS would need capital of approximately $1,600,000 for the first 12 month period of operation to pay for start-up expenses. This included $185,000 for office equipment, $648,300 in employee salaries and related expenses, $168,000 in office operating expenses and $600,000 in development expense related to outsourced software engineering. Wise agreed to provide the funding for this start-up period as an additional capital contribution, but did not request a greater percentage of ownership at this point.

5. On September 25, 2001, Day was admitted as a member of BIS and received three (3) percent of the outstanding ownership of BIS. Thereafter, Wise and Turner each held 48.5 percent.

6. Day became the Chief Financial Officer of BIS. In December 2001, Day recognized that BIS had exhausted nearly the full initial $1,600,000 funding agreed to by Wise (some three months ahead of the projected 12 month burn rate). Wise, Turner and Day met in December 2001 at which time, Wise advised that further funding would be made as debt rather than capital. Turner was silent and Day consented and accepted that the additional funding would be debt. Day testified that he recognized his fiduciary duty to BIS and that without Wise's funding, BIS would have been unable to continue its business plan. At that time, BIS had no additional sources of capital.

7. While Turner did not voice a disagreement at that meeting about the characterization of 2002 funding from Wise as debt, it was clear to everyone that Turner did not agree.

8. From this point forward relations between Wise and Turner were strained. Wise would not agree to further funding as capital unless and until he received an increased percentage of ownership of BIS, a point Turner simply rejected, notwith-

standing the fact that he made no financial contributions to BIS himself. Indeed, during this time Turner drew $15,000 a month from BIS and later had to reduce it to $12,500 a month because BIS was producing little if any independent cash flow for expenses.

9. By April 2002, Wise and Day began to memorialize this disagreement in writing. Day was attempting to resolve the dispute between Wise and Turner amicably since he felt the availability of additional funding and the survival of BIS was dependant upon an agreement by Wise and Turner as to the characterization. Without an agreement, the accountants would not give BIS audited financial statements or a qualified opinion about BIS' financial status which would be a requirement for a new venture capital firm to participate in future funding.

10. Wise spent 60 to 80 hours a week at the offices of BIS working and had a presence among the employees as the investor in the business.

11. Day testified that he prepared the financial statements of BIS. He further testified that he placed all of Wise's funding of BIS in the category of owner's equity from 2001 and 2002. Wise had always intended the 2001 funding as capital funding, but the 2002 investment was intended as debt. Day recognized this, but to avoid confusion regarding the amounts Wise was putting into BIS, placed all of Wise's funding in owner's equity on the Balance Sheets. Day considered this placement temporary until Wise and Turner could agree on the allocation between debt/equity, notwithstanding the fact that Wise and

Days' combined percentage of ownership of BIS exceeded 50 percent.

### LEGAL ANALYSIS

The District Court remanded this matter for further findings on two issues. The first task is for this Court to consider the 2002 contributions of Wise in light of the factors set forth in *Roth Steel Tube Co. v. Commissioner of Internal Revenue*, 800 F.2d 625, 630–32 (6th Cir.1986). The second issue relates to the amount of compensation due Wise.

The *Roth* court set forth eleven factors to be considered in determining whether a shareholder's investment in a company should be classified as debt or equity. The first three elements are the names given to the instrument, the presence or absence of a fixed maturity date and a schedule of repayments, and the presence or absence of a fixed rate of interest and interest payments. *Id.* at 630. There were no notes and thus, no maturity date, schedule of repayments or interest rate. These factors, therefore, weigh in favor of finding that the transaction was a capital contribution.

The fourth factor is the source of repayments. If the source of repayment depends solely on the success of the business, the transaction has the appearance of a capital contribution. *Id.* In this instance, repayment depended on the success of BIS. This factor also weighs in favor of a capital contribution.

The fifth factor is the adequacy or inadequacy of capitalization. Thin capitalization is strong evidence of capital contributions. *Id.* The company was not undercapitalized initially. Wise contributed $1.6 million for use in its first year. The company was in need of a further cash infusion at the time Wise advanced the remaining $1,860,000. The Court be-

lieves this evidence cuts both ways and is not indicative of either debt or equity.

The sixth factor is the identity of interest between the creditor and the stockholder. If the stockholders made advances in proportion to their respective stock ownership, an equity contribution is indicated. On the other hand, a sharply disproportionate ratio between the stockholders' percentage interest in stock and debt is indicative of bona fide debt. *Id.* at 629. Here, the only stockholder making advances was Wise. This factor weighs heavily in favor of classifying the transaction as debt.

The seventh factor is the security for the advances. The absence of security for the advances is a strong indication of capital contributions. *Id.* at 630. There was no security for Wise's advances and thus, this factor weighs in favor of a capital contribution.

The eighth factor is the corporation's ability to obtain outside financing. At the end of 2001, BIS was having trouble finding outside financing. The parties were negotiating with two outside lending facilities. In the course of those negotiations, Wise was asked to subordinate his debt. Turner objected to this characterization and the issue was unresolved at the time the bankruptcy was filed. Due to this unresolved dispute, BIS could not obtain outside financing. This factor weighs in favor of debt since this is how the transaction was portrayed to possible third party investors.

The ninth factor is the extent to which advances were made subordinated to the claims of outside creditors. Subordination of advances to claims of all other creditors indicates the advances were capital contributions and not loans. *Id.* While the subordination was discussed, it never bore fruit. Thus, this factor is given no weight since there were no other creditors of BIS.

The tenth factor is the extent to which advances were used to acquire capital assets. Use of advances to meet the daily operating needs of the corporation, rather than to purchase capital assets, is indicative of a bona fide indebtedness. *Id.* at 632. The funds infused in BIS by Wise after the $1.6 million were for operating expenses of the company. This factor weighs in favor of debt.

The final factor is the presence or absence of a sinking fund to provide repayments. The authority to establish a sinking fund for repayment is evidence that the advances were capital contributions rather than loans. *Id.* at 631. This factor weighs in favor of equity.

This Court finds it important to note that the *Roth* decision states that no one factor is controlling or decisive. *Id.* at 630. *Roth* further instructs that the factors must be considered within the particular circumstances of the case. *Id.* A straight application of the *Roth* factors, without consideration of the particular circumstances of this case, would likely yield a result in favor of classifying the transaction as equity. This Court, however, finds that the circumstances attendant to this transaction require a finding in favor of classifying Wise's infusion of $1,860,000 as debt.

The investment of funds by Wise into BIS created a creditor/debtor relationship between BIS, the Debtor herein, and Wise. Wise did not loan the funds directly to Turner. The Court finds it of little value to solely consider Turner's state of mind at the time of the transaction in determining whether the transfer of funds by Wise was a loan or a capital infusion. The parties' actions with respect to BIS were controlled by the Operating Agreement which was by Turner's own admission member managed. The significance of this being

that a majority of the outstanding shares controlled BIS' decision making.

It is clear that Wise and Turner could not agree on how Wise's second investment was to be characterized. The Operating Agreement required that any capital investment had to be governed by a writing. *See,* Article V, ¶ 1 of the Operating Agreement. Here, there was no writing requiring Wise to make the additional capital contribution of $1,860,000. The Operating Agreement further required only a majority of the members to incur indebtedness. *See,* Article III, ¶ 4(ii). Day consented along with Wise to classify the contribution by Wise as a loan. Day did this because he recognized that the company could not continue without this infusion of funds. By the express terms of the Operating Agreement, Turner's consent was not required for BIS to incur indebtedness. Accordingly, the Court finds that a consideration of the *Roth* factors under the circumstances of the terms of the Operating Agreement requires a finding that Wise's infusion of $1,860,000 should be classified as debt, not equity.

The District Court also remanded this case for a determination on the amount of salary deferred on Wise's behalf. This Court determined in its initial Opinion that Wise was entitled to claim a full two years of salary. The District Court remanded the issue for this Court to address its reasons why it awarded a full two years rather than prorate the salary for 17 months, the term that BIS was in business. Based upon the testimony at the rehearing, the Court finds that Wise's claim to deferred salary should be prorated for the 17 month period that BIS was in business. Accordingly, Wise's claim to deferred salary is $255,000, reflecting a salary of $15,000 per month for 17 months.

## CONCLUSIONS

For all of the above reasons, on remand from the District Court, this Court determines that Wise's claim for $1,860,000 shall be treated as a loan rather than a capital infusion and that Wise's claim to deferred salary is $255,000.

## ORDER

Pursuant to the Memorandum–Opinion entered this day and incorporated herein by reference,

**IT IS HEREBY ORDERED, AD-JUDGED AND DECREED** that the claim of Douglas W. Wise, be and hereby is, allowed as a general unsecured claim in the amount of $1,860,000, plus 17 months of salary in the amount of $255,000.